The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Thank you, and good morning everyone. The first argued case for this panel this morning is number 19-1950, Cannon Incorporated against the ITC. Mr. Sandonato, proceed. Good morning, Your Honors, and may it please the Court. Your Honors, this appeal presents a single question. Did Cannon disavow coupling members that do not pivot? And the answer is an emphatic no. And while we've seen many different flavors of the arguments from all sides, the reason why the answer is no boils down to three basic points. Number one, the language of the claims could not be clearer. Everyone agrees that the claim language encompasses both coupling members that pivot and coupling members that move in a straight line. And in fact, the ALJ found that the term at issue has a plain and ordinary meaning that does not require pivoting. Number two, this single sentence in the specification, that is the lynchpin of the commission's analysis, is not nearly exacting or unequivocal enough to give rise to disavowal. The sentence simply says, in the present invention, the coupling member can. It doesn't say the present invention is. It doesn't say the present invention must have. There's no statement in the specification or the prosecution history that points to pivoting, to distinguish over the prior art, or to obtain allowance. These simply are not the kinds of words of manifest exclusion or restriction that the law requires to find disavowal. And then number three, everyone agrees that we have an embodiment in our specification that expressly teaches that straight line movement can be a substitute for pivoting. There's a little bit of a debate over whether the specification teaches that it can be a complete substitute or just a partial substitute. But everyone agrees that it can be a substitute, at least at some level. And so these three points- Counsel, look- Yes, Judge O'Malley. When you say everyone agrees, I mean, I don't see that there is actual agreement. When you say a substitute or a partial substitute, the question really is, is there any pivoting that occurs, right? It may be less of an angle, but the argument is that it's still a pivot. So it's not a substitute, in their view. Well, there is a debate over whether it can be a complete substitute or a partial substitute. But everyone agrees that it's a substitute, at least at some level. And I'll point, for example, to Appendix 29-30, where the ALJ found that the specification teaches that the degree the coupling member needs to incline for mounting and dismounting operations can be reduced by configuring the coupling member to move axially. Can I just follow up on that? Why do you think it is relevant to the inquiry we have, including as one part, whether there is even a single embodiment lacking pivoting to say that everybody agrees that non-pivoting motion can be a substitute at some level? How does that tend to negate what would otherwise seem apparent, that every single embodiment involves pivoting? Because it's inconsistent to find that can and disavow coupling members that don't pivot when the specification teaches both the desirability and the means for replacing pivoting. The specification tells us that if we introduce axial movement into the coupling member, we can replace pivoting. And again, I acknowledge there's a debate over whether we completely replace it or partially replace it, but certainly the specification shows both the desirability of replacing pivoting and the means for doing so, i.e., introducing axial movement. Well, let me just give you a hypothetical. If you're tilted at a 45-degree angle, then you're tilted. But if you're at a 20-degree angle, you're still tilted, right? And that's correct, Judge O'Malley. If you're at a 15-degree angle, you're still tilted a little bit as well. If you're at a zero-degree angle, you're not tilted at all. And that's one of our points within Embodiment 13. In Embodiment 13, the angle of tilt, it's called alpha 106, is presented as a variable, as a variable that can take on a range of values. Now, in the figure, it's shown as a non-zero angle, but there's no reason from the specification to limit it to a non-zero angle. All the specification tells us about this angle is that it needs to be small, okay? Zero is an angle. In fact, zero is a small angle. You can't get any smaller than the angle of zero. So the Embodiment 13, the full scope of Embodiment 13, is a range of angles, which include zero, up to some non-zero amount that must be small. So you're saying a small angle means no angle? A small angle encompasses no angle, yes. That's correct. So where in the specification do you ever use the word movable? The word itself movable? Yes. There's a variety of places, Your Honor. I would start with the summary of the invention section, for example. So at column 2, at around line 55, it starts, a further object of the present invention is to provide a process cartridge demountable from the main assembly of an electrophotographic image forming apparatus. And then a further object is to provide a drum unit used in the process cartridge that's detachably mounted. That mounting and dismounting that it's talking about is movement of the cartridge itself. Then the discussion goes on to explain that the cartridge needs to go into the printer in a perpendicular manner. And that perpendicular manner creates the need for the coupling member to be movable, to move from one position to another. And the purpose of that is so that the coupling member can get out of the way of the printer drive shaft. But just to be clear, you're asking now for a claim construction that would include a zero angle? We're asking for a claim construction, yes. Yes, we are, Judge Newman. We're asking for a claim construction that would include a zero angle, that would include a type of movement in which the cartridge is moved. The coupling member doesn't tilt at all and only moves axially. And that's consistent with the plain and ordinary meaning of the claim term. And the ALJ acknowledged that. The ALJ acknowledged that the plain and ordinary meaning encompasses movement that does not include any angle. Are you saying we shouldn't look to the spec at all? No, not at all. I think the spec is very relevant in the analysis, Judge O'Malley. Is there anything other than figure 13 or embodiment 13 that you're relying on? Yes, I would rely on all the references in the specification, especially the statements of the objects of the invention, which characterize the objects in a manner that is generic to both pivoting coupling members and coupling members that move in a straight line. When you look to the objects of the present invention, none of them are specific to pivoting. They are all accomplished by coupling members that move both linearly and move by pivoting. That said, clearly embodiment 13 is an important part of our argument and our analysis because embodiment 13, A, clearly teaches that you can interpose or introduce axial movement to replace pivoting, and the full scope of embodiment 13 embraces the configuration and teaches the configuration in which the coupling member moves only axially. Okay, you cited me to one portion of the specification, and I have to say I don't think that proves your point. So is there anything else in the specification? Other than embodiment 13? Other than embodiment 13 and the column two that you pointed to. Yes, and there are, Your Honor. So I would, for example, look to column 31 of the specification. This is that appendix, page 206. Okay, give me a second to get there. Of course. Okay. And this is talking about embodiment number one. This is an embodiment in which the coupling member does pivot. We acknowledge that in this embodiment the coupling member does pivot. But in this embodiment, one of the things it talks about is the engaged position, what it calls the rotational force transmitting position, the position where the two with the coupling member and the printer drive shaft are coupled together. And what this tells us is that the angle in that position can be anywhere from zero to 15 degrees. It says that zero is preferable, but it could be anywhere from zero to 15. Okay, what lines are you on? Your Honor, I'm at around line 42, where it says as to the angle theta one, zero degrees is preferable. And this establishes that zero degrees is indeed an angle. And so this embodiment supports our interpretation of embodiment 13, which again presents the angle alpha as a variable and a variable that can be zero. But this is a pivoting embodiment, right? This is a pivoting embodiment, yes. This is certainly a pivoting embodiment. But it establishes that zero degrees is an angle, and I think that that supports our interpretation of embodiment 13, in which the angle alpha is presented as a range, given a variable, but it's characterized as an angle that needs to be small. And zero is, once again, a small angle. And at this point, you're talking about here after pivoting is completed, right? Well, in this embodiment, yes, it's talking about the position once the coupling member and the printer drive shaft are engaged. That's correct. Okay. Okay, let's hear from the other side, and we'll save you rebuttal time. Thank you, Your Honor. Mr. Jardim? Thank you. Good morning. May I please report? I think I'll just dive right in to rebutting Closing Canon's argument. Yes, please do. Yes, basically, they basically hang their hat on embodiment 13. All disclosed embodiments in the specification, all 19, expressly require pivoting. This includes embodiment 19, which encompasses all previously disclosed embodiments, which includes the present invention statement that, again, expressly states that the coupling member has to take a different angular position, i.e., pivot, to accomplish this. What's your response to your friend's argument that figure 13 shows that zero can be an angle? Regarding embodiment 13, there's simply no teaching that zero can be an angle. Embodiment 13 simply introduces as a complement only axial motion. It only complements the pivoting that's required. Expressly, the specification states, at appendix page 222, column 63, lines 43 through 48, therefore, the space required by the pivoting motion of a coupling 10510 is small. Here we have this language, the space required by the pivoting motion, that clearly states that pivoting is part of this embodiment, as it is with all other 18 disclosed embodiments. Also, if you go to the figure, figure 88C at appendix page 166, it clearly shows, again, that non-zero angle alpha 106. There's no teaching that this angle can go to zero. Again, simply consistent with this court's longstanding precedent where claim language cannot be just simply read in a vacuum. It has to be read in line with the entire specification. Here, again, all 19 disclosed embodiments goes toward pivoting, includes the present invention statement, and there's simply no other interpretation for movable in the claim language but to mean pivoting. So, you would agree that it includes axial motion provided there is an angle? Correct. Pivoting is not eliminated at all. Pivoting, as complemented solely by axial motion for embodiment 13, is included. And rather, as you struggle to find movable in the specification, you have more than 90 times specification includes the word pivot, with some derivation thereof, pivot, pivoted, pivotable, or includes flannable, inclinable, a number of times swing, swingable. That's also a specification describing the required angular positions of the coupling member. But when it's coupled, the result of the coupling is that you do have the axial configuration. Is that right? Are you talking about the rotational force transmitting position when it's substantially flexible? Yes, yes. Yes, that is one of the required positions, but one, again, the coupling member is required to pivot between these three required positions as shown throughout the specification and the illustration. Each illustration, for example, figures 21 through 24, 21 through 25 of the appendix pages, 104 through 107, again, all show this angular movement of the pivotal coupling member. And even in that section describing the smooth transmission, it uses the word substantially coaxial, meaning some small angle of 15 degrees or less. It's at appendix page 206, column 31, lines 38 through 45, also in the associated figure 25D. So it still encompasses some non-zero angle, even when you're at the transmission. You do, though, have, counsel, you do have somewhat, this is Judge O'Malley, I'm sorry. You do have somewhat of an uphill battle in the sense that ALJ said movable has a common and ordinary meaning that doesn't include pivoting. So this has to be a disavowal case, and that requires a lot of showing to overcome the common and ordinary meaning, right? I think it is shown here, again, consistent with this court's precedent, both the longstanding and more recently, as in Tektronix. When, again, you read the claim language in light of the specification as a whole, throughout the specification it characterizes the invention here as a coupling member required to move between these three required angular positions, i.e., pivot between these positions, and accomplish the claimed invention as well as the benefits of the claimed invention, i.e., to be able to transmit the rotational force from the drive shaft to the toner cartridge smoothly even when it's axial deviation. This cannot be accomplished in the absence of pivoting. Similarly here, you have the present invention statement combined with, throughout the specification, all 19 enclosed embodiments, throughout all illustrations, and there's simply no teaching otherwise that axial movement alone can accomplish the claimed invention. Do you need to rely on the fact that the ALJ looked to the 918 Investigation Expert Report as part of the prosecution history for this patent? No, I think it's just icing on the cake for this case. Certainly, again, with this court's longstanding precedent, content of IDS can be used to determine claim scope, and clearly in the expert report it transfers the argument against invalidity, stating that it requires pivoting. But they were talking about different claims, right? Different claims, but still the same common specification, and still going towards what is the essence of the invention here, and it's to a coupling member that's required to take these different angular positions, i.e., pivot between them, in order to accomplish the claimed invention of easy engagement between the toner cartridge and the driveshaft of the printer. And that's at appendix page 19692, paragraph 5, which clearly states the expert's argument that pivots should be kept coaxial with the driveshaft as the coupling member and driveshaft become fully engaged. So here you have, again, consistent with precedent, you have a present invention statement, and then we have all those embodiments going towards pivoting, all illustrations, nothing to the contrary. The only thing they're hanging their hat on is embodiment 13, which again requires pivoting expressly. There's just simply no teaching whatsoever. There can be no other interpretation of movable in the claim language. It has to be interpreted not in the backing, but in context of the specification as a whole, that pivoting is required here for the coupling member. Is there any? Thank you. Okay, thank you. We will hear from Ms. Saharsky. Good morning, and may it please the Court. The ALJ and the ITC got it right. This is a textbook case of disavowal. I'd like to talk about what the ALJ relied on first and then move to some of Cannon's arguments. The ALJ found, consistent with this Court's precedent, that the specification consistently and repeatedly describes only a pivotal coupling member. And Cannon's wrong to say that the ALJ just relied on one single thing. The ALJ relied on, I'd say, at least five things. First, the fact that all 19 embodiments show a pivotal coupling member, and that number 19, which says that it's describing all of the embodiments, says the coupling member had to be pivotal. Two, the present invention language, which comes after all of those embodiments. Three, the fact that all of the figures that show the coupling member show it pivoting. Four, the number of times over 370 that the specification refers to pivoting, inclining, swinging. And then fifth, just the fact that it never says here in this specification, nowhere, in this long, long patent, that the coupling member need not pivot. So that's the package that shows the disavowal. I think the Court's questions, I think, have focused mostly on embodiment 13, so I think I just wanted to address that briefly. The problem, really, from Cannon's perspective, is both what embodiment says and what it shows, and then, essentially, the problems, why axial-only movement doesn't work on embodiment 13. And so I know the Court's discussed it a little bit already, but I just want to make sure that the language is before the Court. You know, if you look at, this is on page appendix 222, column 63, in detail, this is providing an explanation in embodiment 13. What line are you at? I'm sorry, I'm on page 222, column 63, and I'm starting at line, I would say, 38. Okay. And so here, this paragraph and then the paragraphs that follow talk about engagement, and then it talks about disengagement. So if you look around line 38, it says, the movement in the direction of axis L2, which is the axial, and the pivoting motion, swinging operation, are combined, and the coupling is swung from the pre-engagement angular position to the rotational force transmitting angular position. So that says when it's engaged, it pivots, and the pictures, figures 87 and 88, show that. But then it also discusses, and then there's this middle paragraph, which the ICC's counsel referred to, that talks about how there's space required by the pivoting motion, i.e., that you have to have the pivoting motion that's required. And then this next paragraph, which starts around line 49, talks about disengagement, and this is around line 57. It says where the coupling is demounted from the driveshaft. It says the moving operation in the direction of axis L2 and the pivoting motion are combined, and then the coupling's pivoted. So both for engagement and the disengagement, it's combined, the pivoting and the coupling motion. And the court doesn't need to just look at this language in Embodiment 13. I would point the court to also look at the language in Embodiment 19, which we haven't talked about quite so much yet. This is on Appendix 229, Column 78, around line 40. Actually, 38. It says each coupling described above has the following structure. So this Embodiment 19 is describing all of the couplings mechanisms in the embodiments that have come so far. And then starting on line 40, it lists all of those coupling mechanisms in all of the embodiments. And then it says in line 48, each coupling is pivotable. And then as this goes on towards the bottom of the page, it even describes the pivoting more. And so it's not just Embodiment 13. If you had a question in your mind, like, what does Embodiment 13 say, I think you could also look to Embodiment 19, which says it is describing the coupling mechanisms in every embodiment, including 13, and describing them as pivotable. So it may be pivotable, but if it doesn't pivot, then you have just the axial motion. Is that right? Well, there's nothing in Embodiment 13 or anywhere in the specification that teaches just axial motion. It says that pivoting motion and axial motion have to be combined. And I think if you look at both the description in Embodiment 13 and in the figure, it shows why you need to have the pivoting specifically to disengage the coupling member. And so if you looked at figure 87, for example, which is on page 37 of our brief, also in the appendix on page 165, I think it helps to see how this Embodiment 13 works, which is that you have a spring that's pushing the drum mechanism that has the coupling member on the end of it, which in our brief is in yellow, but coupling member is kind of the thing in the middle. And then you have it connecting to the drive shaft, which is coming from the other direction. And so figure 88 showed us how that got into place, which is the coupling member pivoted. But in 13, if they're lined up actually, then you wouldn't want it to pivot. I mean, it doesn't need to pivot. Is that right? This figure is talking about when they're lined up actually, but you need to get them into place and you need to get them out of place. And what I mean by that is you need to insert the printer cartridge to engage it, and then you need to take it out to disengage it. And the point I was trying to make is that to take it out to disengage it as well as putting it in, you need to have the axial movement. And this figure 87 in particular shows that because the spring is pushing forward, there's just no mechanism to move it only axially to disengage it. So it's not just that the language in Embodiment 13 describes the engagement and the disengagement as requiring pivoting. It's that if you look at this actual picture that has a spring that's pushing forward, the only way that you would disengage it and get it out of there is with angular, the pivoting movement, and that's exactly what the language in Embodiment 13 says. As a matter of the technology, that can't be accurate if all of the accused devices don't pivot. Well, that's actually the next point I wanted to make, Your Honor, which is that it's a fundamentally different design and different mechanical structure if you have a device that doesn't pivot and moves only axially. And if you looked, for example, at how our devices work, this is on page 8 of our brief. It shows a picture, and it requires really a whole different mechanical configuration. On page 8, we show that our coupling mechanism, which is over there, does not pivot, but it kind of starts in one position, and then it pushes outward, kind of like a turtle popping its head out of a shell in order to engage with the drive shaft. And the way that it does is that it needs the extra kind of mechanics here, which are the blue lever and the green lever, that when the printer door is shut, the green lever pushes in, and then it causes the coupling member to push outward. And so this may be too much detail, but I guess the point I'm trying to make is that really it's a whole different design and a whole different mechanic to say that there's axial-only movement, and that design just isn't present in the specification. It's not present in the words. It's not present in the figures. It's just not there. Okay, thank you. Does the panel have any questions for Ms. Zaharsky? Just before you sit down, Ms. Zaharsky, can you respond to the contention that it was error for the ALJ to rely on the expert report that was attached to the ID? Sure. So the expert report isn't describing just the – it was in, obviously, the 918 investigation, which is the prior investigation, which addressed the prior patent. But as Your Honor knows, there's a common specification because this is a continuation application. And the point that was being made by the expert in that case was the essence of the invention, and specifically the language was that the solution to the problem that the inventors were trying to solve was a coupling member that pivots. This language is in the appendix on page 19692 if the court wants to look at it. But isn't it true that it's the claims that define the invention, and if they're looking at a different claim, isn't that a leap? Well, the claims are always read in light of the specification. And the report, Dr. Lux's statement, was not referring to particular claims. It was referring to the essence of the invention. It was in the common specification. And look, I mean, the ALJ here relied on a lot of different evidence. It wasn't just Dr. Lux's report.  You know, everything's pointing in one direction here. And so if you only looked at the words and figures in the specification, I think, you know, based on everything that the ALJ focused on, that itself would present a sufficient package for the court to affirm the finding of this avowal. All right. Thank you. Okay. Anything else from the panel?  Okay. Okay, thank you. Then we'll proceed with rebuttal. We have a full rebuttal time, Mr. Sandinaggio. Thank you, Your Honor. And I'd like to start with the commission's comment that the only thing that we're hanging our hat on is Embodiment 13. That's not correct. Our starting point is the claim language. And, again, everyone agrees that the claim language is clear and has a plain and ordinary meaning here that encompasses both kinds of movement. Our next point has to do with this supposed disavowal sentence. Contrary to my friend Sikorski's comments, I think that this was the linchpin of the commission's finding. And I think that without this sentence, disavowal wouldn't be found. And as I said in my opening remarks, it's simply not strong enough to constitute a disavowal here. The disavowal law is very, very strict. It requires that disavowals be clear and unequivocal, and we just don't have that here. Among other things, this statement is the subject of two reasonable interpretations. And that fact alone, the fact that this is amenable to multiple interpretations, is enough to negate a disavowal finding. The commission mentioned the Tektronix case. This is very different than the Tektronix case, because in the Tektronix case there were statements of disparagement, of what was ultimately found to be disavowed. We have nothing like that here. We haven't disparaged axial movement. And in fact, we've taught axial movement, and we've taught axial movement as a replacement for pivoting. Next, the Lux report in the 918, the earlier investigation. Judge O'Malley, you have it absolutely correct. In that case, the expert was analyzing claims that expressly required pivoting. And so it was absolutely correct for him to note that that was a part of the invention. These are very different claims. These are claims that don't expressly require pivoting, and they should be analyzed as such. So the Lux report in the 918 investigation, excuse me, simply has no bearing on the analysis of these claims. In Volume 19, Ms. Sikorsky pointed the court to in Volume 19, and this is in Appendix 229 at around line 39 of Column 78. And I do acknowledge that this says, each coupling member described above has the following structure. But then when you look at the coupling members that are listed here, the specific coupling members that are listed here, noticeably absent is the coupling member 10150. Coupling member 10150 is the coupling member of Embodiment 13. So I don't think that the ALJ was correct in equating this characterization to a characterization of Embodiment 13, because the coupling member of Embodiment 13, 10150, is not listed. Even more fundamentally, this is a discussion of embodiment. This is not a discussion of the invention as a whole. This discussion of embodiment 19 comes about five columns before the present invention statement. And one of the things that we think the ALJ did wrong in her analysis was to equate this discussion of embodiment 19 with the invention as a whole. This present invention sentence in the specification, it truly stands alone. It's the only use of the term present invention in connection with the concept of coupling. Can I just ask you one question about the column 78 listing of, for example, the couplings A, blah, blah, blah, blah, blah, and so on. Put aside the for example and the so on, are there any other embodiment couplings that are missing other than the Embodiment 13 one? That's a very good question, and I did not do the count. Okay. I can say that I do know for a fact that all of the coupling members that are listed do pivot for sure. That's absolutely correct. I'm not sure whether any others are missing. Okay. So, again, the present invention sentence at the end of the specification, that stands alone. This term, the present invention, is used much, much more often in the summary of the invention portion of the specification, for example, and every time it's used, it's used in the context of a statement that is generic to both pivoting and non-pivoting coupling members. It's used to describe objects of the invention that are generic to both types of movement. So we're talking here about a very, very isolated sentence and a sentence that's simply not strong enough to trigger a finding of disavowal. Finish your thought. Thank you, Judge Newman. That was really the final thought I wanted to leave the court with. Would the commission's result have been different here if the single sentence were not there? And I think if you read the ALJ's opinion and if you read the commission's opinion, I think the answer is a clear yes. The result would have been different. It's all about this sentence. And so then we need to think about the propriety of that result. It's one sentence that's written as an observation, not a mandate. It doesn't say the present invention is. It doesn't say the present invention must. This statement is just far too weak to be the basis for disavowal, and that's especially true when it's buttressed by clear claim language, as we have here, and by an embodiment that expressly teaches that linear movement can substitute for pivoting. Thank you, Your Honor. Does the panel have any more questions for Mr. Sandinato? No. No. All right. Thank you. Thank you. Thank you all. This case is taken under submission.